AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
MICHAEL A. SCHACHTER (Bar No. 298610)
Deputy Federal Public Defender
321 E. 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
Jonathan Edward Charles Anderson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JONATHAN EDWARD CHARLES ANDERSON,<br><br>　　　　Defendant. | Case No. ED CR 5:20-cr-00071-RGK<br><br>**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**<br><br>Hearing Date:  July 27, 2020<br><br>Hearing Time: 1:30 p.m.<br><br>Courtroom:　　850 |

## <u>MOTION</u>

Defendant Jonathan Edward Charles Anderson, by and through his attorney of record, Michael Schachter, hereby moves this Honorable Court for an order suppressing (1) all evidence seized as a result of the unconstitutional actions of the San Bernardino County Sheriff's Department ("SBCSD") on November 13, 2019, including the unconstitutional search of Mr. Anderson's vehicle, and (2) any statements made by Mr. Anderson and others to SBCSD on November 13, 2019 concurrent with or after SBCSD's decision to undertake the unconstitutional search.

This motion is based upon the attached memorandum of points and authorities, the attached declarations of Michael Schachter ("Schachter Decl."), Haji Shah ("Shah Decl."), and Jonathan Anderson ("Anderson Decl."), the attached exhibits, the files and

records in this case, and any evidence or argument introduced at the hearing on this matter.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED:  June 29, 2020       By  */s/ Michael Schachter*
MICHAEL SCHACHTER
Deputy Federal Public Defender
Attorney for Jonathan Edward Charles Anderson

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................... 1

III. PROCEDURAL BACKGROUND ......................................................................... 4

IV. ARGUMENT .......................................................................................................... 4

    A.    The Government Bears the Burden to Establish Reasonable Suspicion for the Initial Traffic Stop. ........................................................................... 4

    B.    The Search of Mr. Anderson's Truck Violated the Fourth Amendment. ..... 5

        1.    SBCSD Did Not Have a Valid Community Caretaking Purpose for Impounding Mr. Anderson's Truck at the Time of the Inventory Search. .......................................................................... 7

            a.    Mr. Anderson's Truck Was Legally Parked, Did Not Pose a Safety Hazard, and Was Not Vulnerable to Vandalism or Theft. ................................................................... 7

                (1)    Overview of the Law ..................................................... 7

                (2)    Application of Law to Facts .......................................... 9

            b.    Deputy Peterson Had No Information Before His Decision to Impound and Search the Truck that Mr. Anderson Was Parked at the Residence Without Permission. ................................................................. 9

            c.    Deputy Peterson Failed to Consider Mr. Anderson's Request to Have a Friend Move His Truck Before His Search. .................................................................. 11

            d.    The Absence of a Community Caretaking Purpose is Fatal to Deputy Peterson's Search .......................................... 12

        2.    SBCSD's Inventory Search Also Violated California Law Because There Was No Statutory Basis to Impound at the Time of the Search. .................................................................................. 12

        3.    Even if There Was a Valid Impoundment, Deputy Peterson's Inventory Search was a Ruse for an Unconstitutional Criminal Investigation .......................................................................... 13

            a.    Deputy Peterson's Purpose in Conducting His Search Was to Uncover Evidence of Crime, Rather than Create an Inventory, Which Renders it Invalid. .............................. 14

                (1)    Overview of the Law ..................................................... 14

(2)    Application of Law to Facts..........................................16

b.    The Search is Also Invalid Because it Was Not Undertaken in Accordance With SBCSD's Standardized Policies...................................................................................18

(1)    Overview of the law ......................................................18

(2)    Application of Law to Facts..........................................21

C.    Due To the Fourth Amendment Violation, All Evidence Discovered as a Result of the Illegality of the Search Must Be Suppressed.....................22

V. CONCLUSION......................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avendano-Ruiz v. City of Sebastopol*,
  2016 WL 3017534 (N.D. Cal. May 26, 2016), *reconsideration denied*,
  2016 WL 3476098 (N.D. Cal. June 27, 2016) ........................................................ 11

*Colorado v. Bertine*,
  479 U.S. 367 (1987).................................................................................5, 13, 18

*Delaware v. Prouse*,
  440 U.S. 648 (1979)........................................................................................4

*Fla. v. Royer*,
  460 U.S. 491 (1983).......................................................................................4

*Florida v. Wells*,
  495 U.S. 1 (1990).....................................................................................*passim*

*Lovett v. State*,
  403 So. 2d 1079 (Fla. Dist. Ct. App. 1981).............................................................. 10

*Miranda v. City of Cornelius*,
  429 F.3d 858 (9th Cir. 2005) ......................................................................*passim*

*People v. Williams*,
  20 Cal. 4th 119 (Cal. 1999) ...................................................................... 17

*U.S. v. Santa Maria*,
  15 F.3d 879 (9th Cir. 1994) ...................................................................... 12

*United States v. Anthony*,
  No. 5:18-cr-146-FMO (C.D. Cal. May 8, 2020), Dkt. No. 119 ............................... 18

*United States v. Avendano*,
  373 F. App'x 683 (9th Cir. 2010)......................................................................... 19

*United States v. Caseres*,
  533 F.3d 1064 (9th Cir. 2008) ......................................................................*passim*

iii

*United States v. Centers*,
  2013 WL 7019875 (D. Nev. Dec. 19, 2013) ............................................................ 21

*United States v. Cervantes*,
  703 F.3d 1135 (9th Cir. 2012) ....................................................................*passim*

*United States v. Colin*,
  314 F.3d 439 (9th Cir. 2002) .................................................................................. 23

*United States v. Frank*,
  864 F.2d 992 (3d Cir. 1988) ................................................................................... 21

*United States v. Garay*,
  938 F.3d 1108 (9th Cir. 2019) .......................................................................... 20, 22

*United States v. Gibson*,
  2017 WL 3438450 (D. Nev. Aug. 10, 2017) ...................................................... 21, 22

*United States v. Hellman*,
  556 F.2d 442 (9th Cir. 1977) .................................................................................. 15

*United States v. Jensen*,
  425 F.3d 698 (9th Cir. 2005) .................................................................................... 7

*United States v. Johnson*,
  889 F.3d 1120 (9th Cir. 2018) ...................................................................*passim*

*United States v. Johnson*,
  936 F.2d 1082 (9th Cir. 1991) ................................................................................ 19

*United States v. Lopez-Soto*,
  205 F.3d 1101 (9th Cir. 2000) .................................................................................. 4

*United States v. Maddox*,
  614 F.3d 1046 (9th Cir. 2010) .......................................................................... 11, 19

*United States v. Magdirila*,
  __ F.3d. __, 2020 WL 3424930 (9th Cir. June 23, 2020) ................................. 19, 20

*United States v. Montero-Camargo*,
  208 F.3d 1122 (9th Cir. 2000) (en banc) ................................................................. 5

*United States v. Rogers*,
  156 F. Supp. 3d 1186 (E.D. Cal. 2016) ................................................................... 11

iv

*United States v. Rowland*,
 341 F.3d 774 (8th Cir. 2003) ................................................................................. 17

*United States v. Taylor*,
 636 F.3d 461 (8th Cir. 2011) ................................................................................. 17

*United States v. Torres*,
 828 F.3d 1113 (9th Cir. 2016) ............................................................................. 7, 13

*United States v. Twilley*,
 222 F.3d 1092 (9th Cir. 2000) ................................................................................. 23

*United States v. Verduzo-Verduzco*,
 2018 WL 4057270 (E.D. Cal. Aug. 24, 2018) ...................................................... 20, 21

*United States v. Vickers*,
 2011 WL 4434052 (D. Alaska Sept. 23, 2011) ....................................................... 21

*United States v. Wanless*,
 882 F.2d 1459 (9th Cir. 1989) ............................................................................. 18, 19

*Whren v. United States*,
 517 U.S. 806 (1996) ................................................................................................ 15

*Wong Sun v. United States*,
 371 U.S. 471 (1963) ............................................................................................ 22, 23

**Statutes**

18 U.S.C. § 922 .......................................................................................................... 4, 20

18 U.S.C. § 922 ............................................................................................................. 4

California Vehicle Code § 5201 ..................................................................................... 5

California Vehicle Code § 12500 ................................................................................... 13

California Vehicle Code § 22651 ................................................................................... 12

**Other Authorities**

Fourth Amendment ............................................................................................... *passim*

U.S. Const. amend. IV .................................................................................................. 4

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.  INTRODUCTION

On November 13, 2019, the San Bernardino County Sheriff's Department violated Mr. Anderson's constitutional rights when it elected to impound his truck and performed an inventory search.  Through each of these acts, the SBCSD violated the Fourth Amendment.  As a result, all evidence obtained, including Mr. Anderson's statements made during or after the inventory search, must be suppressed.

### II.  STATEMENT OF FACTS

On November 13, 2019, in the early morning, Mr. Anderson was driving his truck in Phelan, California in search of a friend's house.  Anderson Decl., ¶ 2; Exs. 1A-B at 3:17-3:31.  Just before 2:02 a.m., he turned right onto Chaparral Court.  Anderson Decl., ¶ 2; Ex. 2 at 1.  He then parked his truck in the driveway of 9592 Chaparral Court, the third house on the left-hand side of the street, and exited his truck.  Anderson Decl., ¶ 2; Ex. 2 at 1.

When Mr. Anderson got out of his truck, he was confronted by SBCSD Deputy Daniel Peterson.  Anderson Decl., ¶¶ 2-3.  Deputy Peterson immediately placed Mr. Anderson at gunpoint and ordered him to turn around, put his hands behind his back, kneel, and drop his keys.  Exs. 1A-B at 0:00-1:22; Exs. 3A-B at 0:52-0:57; Ex. 2 at 1.  Mr. Anderson asked for an explanation as to why he was being held at gunpoint but Deputy Peterson ignored this appeal.  *See* Exs. 1A-B at 0:00-1:22.  SBCSD Deputy Kyle Schuler arrived moments later and by 2:04 a.m., Mr. Anderson was detained.  Ex. 2 at 1; Exs. 1A-B at 1:22-1:53; Exs. 3A-B at 1:30-1:40; Ex. 4 at 4; Ex. 5 at 4.

During the ensuing exchange between Mr. Anderson and the deputies, Mr. Anderson stated the house belonged to a friend and volunteered that his driver's license was expired.  Exs. 1A-B at 2:16-2:39.  Deputy Peterson then radioed Dispatch to ask about Mr. Anderson.  Exs. 1A-B at 2:39-2:45; Exs. 3A-B at 1:51-2:03; Ex. 2 at 1; Ex. 4 at 4.  Dispatch responded with information about recent arrests and stated that he was a career criminal.  Exs. 3A-B at 2:16-2:35; Ex. 2 at 1; Ex. 4 at 4.  Meanwhile, Deputy

1

Schuler went through Mr. Anderson's wallet and characterized a few hundred dollars as a "[l]ot of fucking money, dude." Exs. 1A-B at 2:46-2:51. Next, in response to questioning as to why Mr. Anderson had not pulled his truck over when Deputy Peterson activated his overhead lights, Mr. Anderson stated that he hadn't seen any lights until he pulled into the driveway, and that he had been trying to locate his friend's house. Exs. 1A-B at 3:03-3:31.

Moments later, at about 2:06:30 a.m.,[1] Deputy Peterson began walking towards Mr. Anderson's truck, suggesting that he intended to search it. *See* Exs. 1A-B at 4:00-4:05. Mr. Anderson told Deputy Peterson that he did not have his consent to enter or search the truck. Anderson Decl., ¶ 3; Exs. 1A-B at 4:07-4:08 ("You can't check my truck."); *id.* at 4:10-4:11 ("Why can you search my truck?). The deputies responded that they were going to tow the truck because Mr. Anderson didn't have a valid license, and they needed to inventory it. *Id.* at 4:07-4:17, 4:44-4:48. However, neither deputy called for a tow truck. Instead, at about 2:06:35 a.m., Deputy Peterson launched into a search of the truck. Anderson Decl., ¶ 4. Mr. Anderson continued to plead that the deputies could not search or tow his truck. *See id.* at ¶¶ 3-4; Exs. 1A-B at 4:16-4:21 ("No, sir. What? Come on, man . . . Why you guys going to tow my truck?"); *id.* at 4:28-4:33 ("Sir, why you going to do that?"); *id.* at 4:49-4:53 ("I didn't say you guys can search my vehicle, sir."). He added that he could have a friend come get the truck, but the deputies rejected his request. Exs. 1A-B at 4:20-4:26.

At about 2:07:20 a.m., Deputy Peterson ordered Mr. Anderson to get inside his police vehicle but stated that he was being detained and was not under arrest. *Id.* at 4:49-4:55. Deputy Peterson then resumed his search.

SBCSD's policy for impounding vehicles requires an officer electing to impound a vehicle to, among other things, complete a CHP 180 form, "including an inventory of

---

[1] This time can be calculated by cross-referencing statements from Deputy Peterson's recording against statements referenced in the dispatch logs, which provide times certain for certain statements made by Deputy Peterson (e.g., "one at gunpoint").

2

any personal property contained within the vehicle." Ex. 6 at 661-62.

At the time of Deputy Peterson's search, the following items of personal property were among the items contained in the truck:

    a.    Two new pairs of Ray-Ban sunglasses, each with a value of about $150;

    b.    An IPhone cord, with a value of about $10-20;

    c.    An Android phone charge, with a value of about $10-20;

    d.    A partially empty bottle of Sauvage cologne, in which the remaining amount of cologne had a value of about $30;

    e.    A Nixon brand watch, with a value of about $175-200;

    f.    A box of tools, with a collective value of about $50-75;

    g.    An audio speaker, with a value of about $80; and

    h.    Spare change.

Anderson Decl., ¶ 5; Exs. 9-17.

But when Deputy Peterson performed his search of the truck, he did not take notes or prepare an inventory.[2] Instead, as the audio from his recorder shows, he rummaged through the truck. *See* Exs. 1A-B at 4:20-5:00.

By 2:08:46 a.m., just two minutes after Deputy Peterson began his search, the deputy had found a gun under the driver's seat, and the "inventory search" was over. At this time (as noted in dispatch logs), Deputy Peterson read the gun's brand and serial number to Dispatch. Ex. 2 at 2; Exs 3A-B at 3:03-3:24; Ex. 4 at 4.

At 2:17:50 a.m., a tow truck was finally requested, and one or both deputies, well after-the-fact, began filling out a CHP 180 form. They noted that Mr. Anderson's truck was to be "stored" rather than impounded. Ex. 2 at 2; Ex. 8. And even though the form

---

[2] The defense asked the government to produce all notes relating to the November 13, 2019 events at issue in this case. *See* Ex. 7 at 2. Aside from a CHP 180 form, which was not started until 2:17 a.m., *see* Ex. 8 at 1, the government produced no writings prepared contemporaneously with the events at 9592 Chaparral Court. Accordingly, it can be inferred that no such documents exist.

3

provides a section where property and tools can be inventoried, the deputies did not list any of Mr. Anderson's personal property on the form.

At 2:30 a.m., Deputy Peterson placed Mr. Anderson under arrest and left the scene, escorting him to the High Desert Detention Center.  Ex. 2 at 2; Ex. 4 at 5; Ex. 19A-B at 0:00-0:30.  The tow truck did not arrive until 2:53 a.m. and was greeted by Deputy Schuler.  Ex. 2 at 2; Ex. 5 at 4.  Sometime after Deputy Peterson's discovery of the gun but before the tow truck arrived, Deputy Schuler spoke with the homeowner at the residence where the truck was parked.  The homeowner stated he did not know Mr. Anderson and that he did not want the truck in his driveway.  Ex. 20 at 5.

## III.  PROCEDURAL BACKGROUND

Mr. Anderson is charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  (Dkt. No. 1.)  He made his initial appearance before the Court on March 26, 2020.  (Dkt. No. 9.)

A jury trial was originally scheduled for May 19, 2020.  (Dkt. No. 13.)  On May 11th, the Court continued trial until September 8, 2020.  (Dkt. No. 16.)

## IV.  ARGUMENT

### A.    The Government Bears the Burden to Establish Reasonable Suspicion for the Initial Traffic Stop.

The Fourth Amendment proscribes unreasonable searches and seizures.  U.S. Const. amend. IV.  A traffic stop is a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), made permissible only through the existence of reasonable suspicion.  *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000).  Because a traffic stop is a warrantless seizure, the government bears the burden of proving a traffic stop's legality, from inception through its conclusion.  *See United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012); *see also, e.g.*, *Fla. v. Royer*, 460 U.S. 491, 500 (1983) ("It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.").

4

The government therefore bears the burden of proving by a preponderance of the evidence that, at the time of Deputy Peterson's initial traffic stop of Mr. Anderson, he was aware of specific, articulable facts that formed the basis for a particularized and objective suspicion that Mr. Anderson violated the law. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

Here, Deputy Peterson asserts that he pulled Mr. Anderson over for an obstructed license plate in violation of California Vehicle Code § 5201. Ex. 20 at 4; Ex. 8 at 1. Accordingly, the government must show specific, articulable facts that formed the basis for a particularized and objective suspicion that, at the time of the stop, Mr. Anderson had violated this law. If the government fails to meet its burden, the lack of reasonable suspicion for the original traffic stop renders the subsequent search of Mr. Anderson's truck unconstitutional.

## B. The Search of Mr. Anderson's Truck Violated the Fourth Amendment.

Warrantless searches are *per se* unreasonable, unless the government can demonstrate that the warrantless search falls within an exception to the Fourth Amendment's warrant requirement. *Cervantes*, 703 F.3d at 1141.

An impound and resulting inventory search is an exception to the warrant requirement. *See United States v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018). Inventory searches fall into the administrative searches exception to the warrant and probable cause requirements. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Administrative searches have different and lower requirements because they are not conducted for criminal investigatory purposes, but for routine, non-investigatory purposes. *Id.* As the name suggests, the non-investigatory purpose of an inventory search is to "produce an inventory" of property items in a towed vehicle, in order "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v. Wells*, 495 U.S. 1, 4 (1990)).

The government bears the burden of proving that a warrantless search falls within the impound and inventory exception.  *Cervantes*, 703 F.3d at 1141.  It cannot meet its burden here for three independent reasons.

*First*, an inventory search is reasonable under the Fourth Amendment only where the seizure by impoundment preceding it was also reasonable.  *See Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005).  The reasonableness of the impoundment, in turn, "depend[s] on whether the impoundment fits within the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience."  *Id.* (internal quotation marks omitted).  The government bears a "heavy burden" to show that impoundment served a "community caretaking purpose" at the time of the decision to impound, and a failure to meet this burden invalidates the inventory search.  *Cervantes*, 703 F.3d at 1141-42, 1142 n.1.  The government cannot meet its heavy burden here.  At the time of SBCSD's decision to impound and resulting search, Mr. Anderson's truck was legally parked in a driveway, did not pose a safety hazard, and was not vulnerable to vandalism or theft.

*Second*, SBCSD's decision to impound in this case also violated California law because there was no statutory basis to impound Mr. Anderson's truck at the time of Deputy Peterson's inventory search.

*Third*, even assuming a lawful *impoundment*, the government cannot prove that the *inventory search* itself was constitutional.  The Supreme Court and Ninth Circuit have long been clear that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."  *Wells*, 495 U.S. at 4; *see also Cervantes*, 703 F.3d at 1141.  Here, Deputy Peterson's purported "inventory search" violated the Fourth Amendment because it a mere pretext for conducting an unlawful investigative search.  Among other things, Deputy Peterson didn't even produce an inventory of personal property, exposing his search as a sham.

6

Each of the above is independently fatal to SBCSD's inventory search.  But, in this case, the government cannot meet its obligation as to any of them.  Accordingly, the Court should grant Mr. Anderson's motion to suppress.

**1.      SBCSD Did Not Have a Valid Community Caretaking Purpose for Impounding Mr. Anderson's Truck at the Time of the Inventory Search.**

Again, the inventory exception applies only where, among other things, the preceding decision to impound furthers a community caretaking purpose.  *See, e.g.*, *Johnson*, 889 F.3d at 1125; *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008); *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016).  The government bears a "heavy burden" to establish that impoundment served a community caretaking purpose, and where it "fails to establish a community caretaking function for the impoundment," . . . it "fails to establish the constitutional reasonableness of the seizure and subsequent inventory search." *Cervantes*, 703 F.3d at 1141-42, 1142 n.1 (internal quotation marks and alteration omitted).

**a.      Mr. Anderson's Truck Was Legally Parked, Did Not Pose a Safety Hazard, and Was Not Vulnerable to Vandalism or Theft.**

**(1)      Overview of the Law**

The Ninth Circuit has focused its inquiry in impoundment cases not on whether the defendant might drive the vehicle again but rather squarely on the location of the vehicle and whether it was actually "impeding traffic or threatening public safety or convenience" on the streets so as to justify impoundment. *Miranda*, 429 F.3d at 865 (9th Cir. 2005) (internal quotation marks omitted). "Whether an impoundment is warranted under the community caretaking doctrine depends on the location of the vehicle and the police officer's duty to prevent it from creating a hazard to other drivers or from being a target for vandalism or theft." *Caseres*, 533 F.3d at 1075 (9th Cir. 2008); *see also United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) (upholding

7

impoundment because "[o]nce the arrest was made, the doctrine allowed law enforcement officers to seize and remove *any vehicle which may impede traffic, threaten public safety, or be subject to vandalism*." (emphasis added)).  A driver's arrest or citation "is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location *at which it jeopardizes the public safety or is at risk of loss*."  *Miranda*, 429 F.3d at 864 (emphasis added).[3]

For example, in *Caseres*, the impound was found to be unconstitutional when the government "[did] not present[] any evidence that the car was blocking a driveway or crosswalk, or that it posed a hazard or impediment to other traffic." 533 F.3d at 1075. So too in *Cervantes*: "Neither [officer] provided any testimony that Cervantes' vehicle was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft." 678 F.3d at 805.  In sum, "[a]n officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers."  *Miranda*, 429 F.3d at 866 (emphasis added).

Nor is impoundment authorized by concern about future illegal driving.  Instead, the cases are clear that fears about what a suspect might do will not support application of the community caretaking exception.  In *Miranda*, for example, the Ninth Circuit rejected the government's efforts to justify an impound under the community caretaking doctrine to prevent the car owner from driving the car without a license.  *Id.* at 865-66.  The court held that "the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard.  *The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale*."  *Id*. at 866 (emphasis added).  The government also raised the driving-prevention argument in *Caseres*, and the Ninth Circuit again expressed doubt

---

[3]     Further, the government cannot "justify the impoundment by simply citing to sections of the California Vehicle Code and the [police department's] policy on impoundments and inventory searches."  *Cervantes*, 703 F.3d at 1142.

8

that "impounding an unlicensed driver's car to prevent its continued operation is itself a sufficient community caretaking function."  533 F.3d at 1075.

**(2)    Application of Law to Facts**

In this case, at the time of Deputy Peterson's decision to impound and his resulting search, Mr. Anderson's truck was legally parked, did not pose a safety hazard, and was not vulnerable to vandalism or theft.  Nor was impoundment authorized by any concern about future illegal driving by Mr. Anderson.  As stated, the cases provide that any such concerns do not support application of the community caretaking exception.

Further, the fact that the truck was not parked at or near Mr. Anderson's home likewise does not justify impoundment under Ninth Circuit law.  In *Cervantes*, the Ninth Circuit noted that the vehicle was not parked near the driver's home.  678 F.3d at 805.  It nonetheless rejected the distance from the driver-suspect's address as a basis for impoundment because, as here, there was no evidence that the vehicle would be vulnerable to vandalism or theft if it were left in that residential location.  *Id.*

> **b.    Deputy Peterson Had No Information Before His Decision to Impound and Search the Truck that Mr. Anderson Was Parked at the Residence Without Permission.**

As noted, sometime *after* Deputy Peterson searched the truck, Deputy Schuler spoke with the homeowner where the truck was parked.  He stated he did not know Mr. Anderson and did not want the truck in his driveway.

The homeowner's post-search statement is irrelevant to evaluating whether a community caretaking purpose was established at the time Deputy Peterson actually searched the truck.  This is so because Deputy Schuler elicited this statement only *after* the decision to impound was made, and *after* the purported inventory search resulting in discovery of the gun was already complete.  Crucially, SBCSD had no information *before* the decision to impound and *before* the search establishing that Mr. Anderson was parked at the residence without permission.  To the contrary, Mr. Anderson stated before the search that he believed he was at a friend's house, and Deputy Peterson

9

noted in his police report that Mr. Anderson was at the residence to meet somebody. Exs. 1A-B at 2:16-2:23, 3:17-3:31; Ex. 20 at 5.

*Lovett v. State*, 403 So. 2d 1079 (Fla. Dist. Ct. App. 1981) is instructive.  There, the Court held that a search of a car, which had led to the discovery of drugs, could not be justified as an inventory search where the car was parked off the street in a private driveway.  *Id.* at 1080-82.  The Court rejected the government's contention that the search was justified under the community caretaking function, emphasizing that the car "in no way creat[ed] a public hazard or nuisance," and noting that, at the time of the search, the owners of the private driveway had not requested assistance in removing the car.  *Id.* at 1081-82.  The Court further explained: "[E]ven though there was no one home at the time Deputy Mulkin investigated, for all we know the owner of the driveway could have given [defendant] permission to park his care there.  In any event, it was not illegally parked as against any existing law.  No complaint had been made to any law enforcement agency, and no request for removal; the car was simply parked in a private driveway and the house to which the driveway led was unoccupied at the time."  *Id.* at 1081.  And in language that applies with equal force to the SBCSD's conduct here, the Court added: "Deputy Mulkin was premature in his search . . . . He could have awaited a complaint from the owner of the driveway so that the car could have been towed into impoundment. . . . None of this occurred; and while he certainly had reasonable cause to investigate an obvious accident, he was without constitutional authority to search a locked car in a private driveway at the time he did so."  *Id.*; *see also cf. Miranda*, 429 F.3d at 864-66 (impoundment of vehicle from owners' driveway was not justified by the community caretaking doctrine).

Here, the Court should likewise find that there was no community caretaking purpose at the time of Deputy Peterson's search.  A contrary rule allowing law enforcement to tow a vehicle legally parked in a third party's driveway, without first asking the homeowner whether she consented to having the vehicle parked there, would result in law enforcement having carte blanche to tow legally parked vehicles posing no

threat whatsoever to public safety or traffic.  This is precisely the unconstitutional result that the community caretaking rule is designed to prevent.

        **c.**      **Deputy Peterson Failed to Consider Mr. Anderson's Request to Have a Friend Move His Truck Before His Search.**

Even where impoundment is proper, "'[t]he policy of impounding the car without regard to whether the defendant can provide for its removal is *patently unreasonable* if the ostensible purpose for impoundment is for the 'caretaking' of the streets.'" *Miranda*, 429 F.3d at 865 (emphasis added) (quoting *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir.1996)); *see also, e.g.*, *United States v. Maddox*, 614 F.3d 1046, 1050 (9th Cir. 2010) (holding that police officers unreasonably impounded a vehicle where the defendant "offered to have his friend move the vehicle").

In *Maddox*, the Ninth Circuit evaluated compliance with Washington state law, which provided that a car may be impounded only when, among other things, "neither the defendant nor his spouse or friends are available to move the vehicle."  429 F.3d at 1050.  But several district courts in this circuit have also agreed that police officers should not impound a car when a licensed driver is readily available to move it, even where a local policy does not explicitly require officers to permit another driver to take the vehicle.  *See*, *e.g.*, *United States v. Rogers*, 156 F. Supp. 3d 1186, 1191 (E.D. Cal. 2016) (finding impoundment unlawful, in part, because of the "critical fact" that the defendant "asked several times if he could call his mother" — who lived eight miles away — "so she could drive it home") (quotations omitted); *Avendano-Ruiz v. City of Sebastopol*, 2016 WL 3017534, at *6 (N.D. Cal. May 26, 2016) (finding impoundment unreasonable, despite being parked in a time-limited zone, because the arrestee had sufficient time "to find a licensed and registered driver who could move the car," and told the police officer "he knew someone who could move the car within a few minutes"), *reconsideration denied*, 2016 WL 3476098 (N.D. Cal. June 27, 2016).

In this case, as Deputy Peterson was springing into his search, Mr. Anderson twice asked the deputies to allow him to have a friend come get his truck.  Exs. 1A-B at

11

4:20-4:26.  Deputy Peterson's decision to impound and follow through with his search despite Mr. Anderson's stated ability to have a friend remove the vehicle was *per se* unreasonable under the Fourth Amendment.

### d.      The Absence of a Community Caretaking Purpose is  Fatal to Deputy Peterson's Search.

For each of the above reasons, SBCSD cannot meet its "heavy burden" to show that impoundment served a community caretaking purpose.  Because the government cannot demonstrate proper impoundment, suppression is required.

### 2.      SBCSD's Inventory Search Also Violated California Law Because There Was No Statutory Basis to Impound at the Time of the Search.

Deputy Peterson's stated that he impounded the truck because Mr. Anderson's driver's license was expired.  Ex. 20 at 5; Ex. 1 at 4:07-4:17, 4:44-4:48.  But this, by itself, does not present a statutory basis for impounding a vehicle.

Nor does the CHP 180 cure the problem.  That form cited California Vehicle Code § 22651(h) as the statutory basis for "storing" Mr. Anderson's truck.[4]  Ex. 8.  But Section 22651(h)(1) authorizes impoundment where "an officer *arrests* a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." (emphasis added).  Here, Deputy Peterson did not arrest Mr. Anderson until *after* he decided to impound and search the truck.  Accordingly, Section 22651(h) likewise did not present statutory authority for the impoundment.

The absence of a statutory ground for SBCSD's impoundment independently renders it invalid.  *See U.S. v. Santa Maria*, 15 F.3d 879 (9th Cir. 1994) (reversing

---

[4]      In the CHP 180 form, the box for "storing" the truck is checked off, rather than the box for impounding it, because the form was filled out after Deputy Peterson had already completed his unlawful, purported inventory search.  Hence, he had already arrested Mr. Anderson, which in turn likely prompted the decision to store rather than impound the truck.

denial of motion to suppress and holding that search of trailer on private land violated the Fourth Amendment because there was no statutory basis for the search in the absence of probable cause or consent).

At a minimum, the lack of a statutory basis for impounding the truck is further evidence that impoundment was not justified by the community caretaking exception. *See Cervantes*, 703 F.3d at 1142-43 (noting law enforcement's failure to comply with the California Vehicle Code, and observing that "[w]hile the purported reason for the impoundment of [defendant's] car was his alleged driving without a license, in violation of California Vehicle Code § 12500(a), according to both officers, [defendant] was arrested and taken into custody only *after* the vehicle was impounded and the inventory search had already resulted in the discovery of narcotics").

**3.      Even if There Was a Valid Impoundment, Deputy Peterson's Inventory Search was a Ruse for an Unconstitutional Criminal Investigation.**

Even assuming for argument's sake that there was a valid *impoundment*, the Court must still grant the motion to suppress because the *inventory search* itself was unconstitutional.  As stated, an inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence," but that is precisely what transpired in this case.  *Wells*, 495 U.S. at 4.

In order to ensure that police are not misusing the inventory search process to conduct impermissible general rummaging, courts have articulated two requirements for a valid inventory search: (1) the individual officer's purpose in engaging in the search must be to inventory the car, as opposed to conducting a criminal investigation, and (2) the search must be conducted in accordance with the department's standardized policies and procedures.  *See Bertine*, 479 U.S. at 375 (inventory search must be conducted "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity"); *Torres*, 828 F.3d at 1118 (warrantless impound and inventory search valid only if conducted "in conformance with the

13

standardized procedures of the local police department and in furtherance of a"
noninvestigative purpose (citing *Cervantes*, 703 F.3d at 1141)).

These two requirements are connected, in that the second requirement, adherence to standardized procedures, is intended to reduce the possibility that an officer will violate the first requirement, that the search be undertaken with a noninvestigative purpose. As the Supreme Court explained in *Florida v. Wells*, while suppressing items found in a closed container during a purported inventory search because the searching agency had no policy with regard to searching closed containers, "standardized criteria, or established routine, must regulate the opening of containers found during inventory searches" such that individual police officers are "not . . . allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." 495 U.S. at 4-5 (internal citations and quotation marks omitted). *See also Caseres*, 533 F.3d at 1074 ("warrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property"). Nonetheless, as discussed below, they are separate requirements, and the Ninth Circuit has suppressed evidence for violations of each requirement in isolation.

Deputy Peterson's conduct here violated both requirements.

### a. Deputy Peterson's Purpose in Conducting His Search Was to Uncover Evidence of Crime, Rather than Create an Inventory, Which Renders it Invalid.

Numerous facts confirm Deputy Peterson's purported inventory search was invalid because his subjective purpose in undertaking the search was plainly criminal investigation as opposed to creating an inventory.

### (1) Overview of the Law

In its recent decision in *United States v. Johnson*, the Ninth Circuit suppressed evidence found during a purported inventory search because the officers undertook the

14

purported inventory search not to inventory the car but for criminal investigatory purposes. *See* 889 F.3d at 1127.

The Court explained that despite the usual rule that an officer's subjective intent plays no rule in a Fourth Amendment inquiry, when the government seeks to justify a search as an inventory or other administrative search, "actual motivations do matter." *Id.* at 1125 (internal quotation marks omitted). In such cases, in order to prevent administrative searches from being used as pretext for criminal investigative searches, a court "must inquire into an officer's purpose" when presented with objective evidence suggesting that the intrusion was not made for the administrative purpose. *Id.* at 1125-26; *see also Whren v. United States*, 517 U.S. 806, 811-12 (1996) ("the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes"). While "the mere 'presence of a criminal investigatory motive' or a 'dual motive — one valid, and one impermissible —' does not render an administrative stop or search invalid," if the actual challenged search would not have occurred but for the impermissible criminal investigatory motive, then the search cannot be justified as an inventory search. *Johnson*, 889 F.3d at 1126 (quoting *United States v. Orozco*, 858 F.3d 1204, 1213).[5]

Importantly, when this Court looks at whether the search would have occurred but for the criminal investigatory motive, it does not look simply at whether *any* search

---

[5]    *Johnson* accords with an older case, *United States v. Hellman*, 556 F.2d 442 (9th Cir. 1977), in which a parolee was arrested on a violation warrant, leaving his car parked partially blocking a driveway, and evidence found during an inventory search of the car was used to prosecute him for fraud, *id.* at 443. The Court held that it was "clear from the testimony of the searching officer that the citation, the impounding and the inventorying all were for 'an investigatory police motive," and that that fact "alone [wa]s sufficient to conclude that the warrantless search of the car was unreasonable." *Id.* at 444. *See also Caseres*, 533 F.3d at 1074-75 (invalidating inventory search of vehicle where government failed to show impound was for a permissible purpose); *Cervantes*, 703 F.3d at 1141-42 (same).

15

would have taken place.  In *Johnson*, the car was impounded legally, and the department's policy, which this Court held was valid for Fourth Amendment purposes, required an inventory search of the vehicle.  *Id.* at 1126-27.  Accordingly, there was no question in *Johnson* that some inventory search of the vehicle was supposed to occur; rather, the question in *Johnson* was whether the actual search that did take place would have occurred in the same way absent the improper motive.  This Court answered that question in the negative, looking at the officers' admissions that they seized closed bags and other items during the purported inventory search to hold as possible evidence, and pointing additionally at a comparison between the items that were logged on the property inventory form, and those that were not.  *Id.* at 1127, 1128 & n.1.  In particular, the officers seized and logged items containing incriminating evidence, and ignored items that did not have evidentiary value.  *Id.* at 1128 n.1.

### (2)    Application of Law to Facts

Numerous facts here show that Deputy Peterson's search was undertaken for the purposes of conducting a criminal investigation, not a valid inventory search.

*First,* mere moments before Deputy Peterson abruptly decided to impound and "take an inventory" of Mr. Anderson's truck, Dispatch told him about Mr. Anderson's recent arrests and stated that he was a career criminal.  Exs. 3A-B at 2:16-2:35; Ex. 2 at 1; Ex. 4 at 4.  Deputy Peterson's awareness of Anderson's criminal history provided him with a greater incentive to search for contraband or evidence of a crime.

*Second*, the tone of Deputy Schuler's comment, that Mr. Anderson's had a "[l]ot of fucking money, dude," suggests the deputies were suspicious that Mr. Anderson was hiding contraband within the truck.  Exs. 1A-B at 2:46-2:51.  This too suggests an investigatory motive for the search that began moments later.

*Third*, after Deputy Peterson's sudden decision to impound and search the truck, neither Deputy Peterson nor Deputy Schuler actually called for a tow truck.  Instead, Deputy Peterson walked towards the truck and immediately launched into his search.  The fact that the deputies did not call for a tow truck until after they performed the

search and found a gun reveals that the original search was a criminal investigation, not an inventory search pursuant to an actual request for impoundment.

*Fourth*, during the "inventory search" leading up to his discovery of the gun, Deputy Peterson took no notes and failed to complete any inventory form. Instead, as the audio from his recorder demonstrates, he merely "rummaged" through the truck in search of evidence and contraband.

*Fifth*, the deputies did not even start filling out a CHP 180 form until well *after* Deputy Peterson completed his search and found the gun. And, even then, their utter disinterest in actually creating an inventory is apparent in their final product. As noted above, despite the presence of extensive personal property in the truck, not a single item of personal property aside from the "firearm" was noted on the form. Indeed, the deputies didn't even list Mr. Anderson's box of tools, despite the fact that "tools" a specific category of property that the "REMARKS" section of the CHP 180 identifies for inventorying. Courts have repeatedly recognized that a failure to take a meaningful inventory can demonstrate that a purported inventory search was pretextual. *See Wells*, 495 U.S. at 6 (Brennan, J., concurring in judgment) (whether "an inventory was actually done" is relevant to determining whether "the officer used the need to 'inventory' as an excuse to search . . . ."); *Johnson*, 889 F.3d at 1128 n.1 ("The officers' statements as to their investigative motivations are further buttressed by comparing the items that were seized and logged on the property inventory form with those that were not."); *People v. Williams*, 20 Cal. 4th 119, 138 (Cal. 1999) ("If [the deputies] truly intended to take an inventory pursuant to a preexisting policy or practice rather than to search for drugs, why did they fail to complete the inventory?"); *United States v. Taylor*, 636 F.3d 461, 464-65 (8th Cir. 2011) (officer's "description of 'misc. tools' [did] not constitute a detailed, itemized inventory," as required by departmental procedures, and was therefore "insufficient to remove the inference that the search was investigatory"); *United States v. Rowland*, 341 F.3d 774, 781 (8th Cir. 2003) ("law enforcement's failure to record property does illustrate the inventory search was

17

pretextual"); Order Re: Motion to Suppress at 20-21, *United States v. Anthony*, No. 5:18-cr-146-FMO (C.D. Cal. May 8, 2020), Dkt. No. 119 ("[A]s both objective and subjective indicia, courts look at what is listed and what is not listed - i.e., what is seized and what is not – on the vehicle inventory form as evidence of an officer's investigative motivations.").

Accordingly, for all of the above reasons, it is clear Deputy Peterson's "inventory search" was a mere ruse for a criminal investigation and the Court should grant Mr. Anderson's motion on this basis alone.

### b.     The Search is Also Invalid Because it Was Not Undertaken in Accordance With SBCSD's Standardized Policies.

Separate and apart from whether the search was invalid because Deputy Peterson's subjective purpose in undertaking it was criminal investigation, rather than creating an inventory, the purported inventory search was also invalid because it violated SBCSD's policy on impoundment.

### (1)     Overview of the law

A purported inventory search that is conducted without standardized procedures or practices is not constitutionally reasonable. *Wells*, 495 U.S. at 4-5; *see also Bertine*, 479 U.S. at 375. An obvious corollary is that a purported inventory search that fails to follow such procedures and practices when they do exist is also not constitutionally reasonable. Standardized procedures that are ignored can hardly serve their function of limiting inventory searches to permissible, noncriminal purposes. *See, e.g.*, *United States v. Wanless*, 882 F.2d 1459, 1464 (9th Cir. 1989) ("the *federal* law on inventory searches by state or local police officers is that they must be conducted in accordance with the official procedures of the relevant *state* or *local* police department").

For this reason, the Ninth Circuit has repeatedly found purported inventory searches invalid and suppressed their fruits where the officers conducting the searches failed to follow proper procedures. For instance, in *United States v. Wanless*, the Ninth Circuit was faced with purported inventory searches of two cars stopped for speeding

18

by Washington State troopers, *id.* at 1460-61.  Neither driver and none of the passengers had a valid license, so the troopers impounded the vehicles and began inventory searches, during which they found drug residue and drug paraphernalia.  *Id.* at 1461.  The troopers then switched to investigatory searches based on what they found during the inventory searches, during which they found drugs and a gun.  *Id.* However, the troopers failed to abide by Washington's requirement that before initiating an inventory search, officers give the vehicle owner the option of waiving the protection of an inventory search and taking his or her chances that no property would be lost while the car was in impound.  *Id.* at 1463 & n.5.  Because of the officers' failure as to "this small, but ultimately pivotal point," the Ninth Circuit held that the inventory searches were illegal.  *Id.* at 1463-64.

Similarly, in *United States v. Johnson*, 936 F.2d 1082 (9th Cir. 1991), the Ninth Circuit held unconstitutional the search of a trunk during a purported inventory search where the officers failed to observe a requirement that they have a "manifest necessity" before searching a trunk as part of an inventory search, *id.* at 1084.  And more recently, in *United States v. Maddox*, the Ninth Circuit again affirmed that "[v]ehicular inventory searches must be conducted in accordance with the standard procedures of the [relevant department] in order for procured evidence to be admitted in federal court," 614 F.3d at 1049 (internal quotation marks omitted).  It then held that the search was not a valid inventory search because the officers failed to follow the requirements for determining whether to impound the vehicle.  *Id.* at 1049-50; *see also United States v. Avendano*, 373 F. App'x 683, 684-85 (9th Cir. 2010) (the law of the circuit is that the inventory search exception requires the government to demonstrate "standardized local inventory search procedure; and . . . compliance with that procedure").

To be sure, "minor noncompliance with department policies," evaluated with reference to the circumstances of a particular case, "does not invalidate an otherwise lawful inventory search."  *United States v. Magdirila*, __ F.3d. __, 2020 WL 3424930, at *4 (9th Cir. June 23, 2020).  In *Magdirila*, for example, the Ninth Circuit held that

19

the failure to list all property on a CHP 180 form, as required by a department policy, did not render an inventory search invalid under the facts of the case. *Id.* The Court found substantial compliance with the department policy's direction to inventory property in an impounded vehicle for two reasons. First, the officers did include some personal property on the form, including an iPhone and an Apple watch. *Id.* Second, and equally important, numerous items contained in the vehicle, but unlisted on the form, including a backpack, welfare benefits card, lockbox, air gun, flash drive, and ink jet toner cartridges, were listed on the police report, which the officers cross-referenced on the CHP 180 form. *Id.*

Similarly, in *United States v. Garay*, 938 F.3d 1108 (9th Cir. 2019), the Ninth Circuit was faced with a situation in which a defendant crashed into a ditch after a high-speed chase, totaling the car, and then attempted to flee on foot before being arrested. *Id.* at 1110. As part of the process of towing the car out of the ditch, SBCSD deputies did an inventory search of the car and located several firearms, which became the basis for the defendant's federal 18 U.S.C. § 922(g) charges. *Id.* While the deputies did not properly fill out the inventory form as required by department policy, they otherwise did nothing to suggest that they were not earnestly engaged in an inventory of the vehicle. *Id.* at 1110-1112. Under these unique circumstances, the Court held that the failure to properly fill out the inventory form, on its own, was not a material deviation from policy and did not make the search invalid. *Id.* at 1112.

Like the Ninth Circuit, lower courts throughout the circuit have also suppressed evidence found during purported inventory searches where the officers failed to follow procedures. For instance, in *United States v. Verduzo-Verduzco*, 2018 WL 4057270 (E.D. Cal. Aug. 24, 2018), the district court noted that "careful compliance with standard police procedures is the only bulwark to cabin an officer's discretion and ensure that an inventory search does not become mere pretext for an exploratory search," *id.* at *10. It then found that the officer had failed to follow department procedures requiring him to document "all property" in the vehicle by not listing some

cellphones and bags he saw in the course of his search, rendering the search invalid. *Id.* "This is not simply a technical oversight. An 'inventory' that fails, without any justification, to document items of value does not serve the purpose of an inventory, and may as well not be an inventory at all." *Id.*

That insight is echoed by a district court in Nevada, which, reacting to an inventory search conducted by officers who either only wrote down items of major value, or did not write down items at all, but simply remembered them, suppressed the evidence and stated: "A documented list or catalog of items is the hallmark of an inventory search, and so it must be to cabin discretion and justify dispensing with the warrant requirement." *United States v. Gibson*, 2017 WL 3438450, at *4-5 (D. Nev. Aug. 10, 2017). *See also United States v. Centers*, 2013 WL 7019875, at *13 (D. Nev. Dec. 19, 2013) (suppressing handgun where police failed to follow impoundment procedures by not contacting registered owner before impounding vehicle); *United States v. Vickers*, 2011 WL 4434052, at *9 (D. Alaska Sept. 23, 2011) (suppressing evidence found during purported inventory search where officer failed to follow procedures by moving items that procedures did not permit him to move).

### (2)    Application of Law to Facts

SBCSD Policy 3.566.10 is the department's policy for impounding vehicles. Deputy Peterson failed to comply with this policy here in two different ways.

*First*, Policy 3.566.10 requires an officer electing to impound a vehicle to complete a CHP 180 form, "including an inventory of any personal property contained within the vehicle." Ex. 6 at 661. But, again, Deputy Peterson completely failed to follow this most basic of inventory procedures: he did not list any of the personal property contained in Mr. Anderson's truck. *See supra* at Part II. The requirements of a detailed, itemized list are in keeping with the basic purposes of an inventory: protecting individual's property and reducing claims of lost, stolen, or vandalized property. *See Wells*, 495 U.S. at 4; *see also United States v. Frank*, 864 F.2d 992, 1004 (3d Cir. 1988) ("an inventory . . . necessarily implies a *detailed* account, catalog, or

21

schedule"); *Gibson*, 2017 WL 3438450, at *4–5 ("[a] documented list or catalog of items is the hallmark of an inventory search").

*Second*, the officer electing to impound must "[o]btain the signature, date, and time of the arrival of the tow truck driver." Ex. 6 at 661.[6]  In this case, Deputy Peterson left the scene at 2:30 a.m., well before the tow truck arrived at 2:53 a.m.  Ex. 2 at 2; Ex. 4 at 5; Ex. 5 at 4.  While it is true that the information from the two truck driver was obtained, presumably by Deputy Schuler, Deputy Peterson's failure to fulfill this requirement himself invites broader questions about his role in performing an inventory and completing the CHP 180 form as required by Policy 3.566.10.

Deputy Peterson's complete disregard for these minimal and unambiguous policies independently renders his purported inventory search invalid.[7]

**C.      Due To the Fourth Amendment Violation, All Evidence Discovered as a Result of the Illegality of the Search Must Be Suppressed.**

The Fourth Amendment requires not only the exclusion of all evidence directly obtained through its violation, but also the exclusion of all "fruits" thereof.  *Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963).  This "exclusionary rule" extends to both direct and indirect products of such unlawful searches.  Therefore, the Supreme Court has held that "verbal evidence which derives so immediately from an unlawful

---

[6]      The department policy for storing vehicles likewise requires the officer electing to store the vehicle to complete a CHP 180 form, "including an inventory of any personal property contained within the vehicle," and "[o]btain the signature, date, and time of the arrival of the tow truck driver."  Ex. 6 at 658.

[7]      There are differences between the officers' deviations from policy in *Garay*, and those here by Deputy Peterson.  For instance, the officer in *Garay* checked a box to indicate that the car contained items of value before allowing it to be towed, and no analogous inventory-like act was taken here.  *Garay*, 938 F.3d at 1110.  As discussed, the *Garay* Court was also confronted with an exigent situation in which a car needed to be towed out of a ditch, and the Court was clear that its decision rested on the fact that nothing in that case besides the deficiency in the form indicated pretext.  *Id.* at 11110-12.  Further, and as noted above, Deputy Peterson's deviation from the applicable policy is not limited to his failure to prepare an inventory.

22

entry is no less the fruit of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* at 485.

In this case, the Court must suppress all evidence seized from Mr. Anderson's truck, as well as all statements made by Mr. Anderson to SBCSD on November 13, 2019 during or after SBCSD's decision to undertake its unconstitutional search. *See United States v. Colin*, 314 F.3d 439, 446-47 (9th Cir. 2002) (holding that because the officer did not have reasonable suspicion to stop the defendant, the methamphetamine seized during a search of the car must be suppressed); *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000) (finding that there was an illegal stop and therefore all products of the search and seizure must be suppressed).

## V.  CONCLUSION

For the foregoing reasons, Mr. Anderson respectfully requests that the Court enter an order suppressing (a) all evidence resulting from the search of Mr. Anderson's vehicle on November 13, 2019, and (b) any statements made by Mr. Anderson or anyone else to SBCSD on November 13, 2019 concurrent with or after SBCSD's decision to undertake the search.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED:  June 29, 2020          By  */s/ Michael Schachter*

MICHAEL SCHACHTER
Deputy Federal Public Defender
Attorney for Jonathan Edward Charles Anderson

23